UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

BARBARA FISKO, MATTHEW CARDINALE,

        Plaintiffs,

  - against -

U.S. GENERAL SERVICES ADMINISTRATION,
THE UNITED STATES OF AMERICA,

        Defendants.

------------------------------------------X

04 Civ. 10065 (RWS)

O P I N I O N

A P P E A R A N C E S:

    LAW OFFICE OF JAMES J. KILLERLANE
    Attorneys for Plaintiffs
    175 Main Street, Suite 606
    White Plains, NY 10601
    By: MONTGOMERY J. DELANEY, ESQ.
        Of Counsel

    HONORABLE MICHAEL J. GARCIA
    United States Attorney for the
        Southern District of New York
    Attorneys for Defendants
    86 Chambers Street
    New York, NY 10007
    By: ALLISON D. PENN, Assistant US Attorney
        Of Counsel



10/18/05

Sweet, D.J.,

The defendant the United States of America (the "Government") has moved under Rule 12(b)(1), Fed. R. Civ. P., to dismiss the complaint of plaintiffs Barbara Fisko ("Fisko" or the "Plaintiff") and her husband Matthew Cardinale ("Cardinale"), (collectively, the "Plaintiffs") seeking damages for a fall resulting from a defective sidewalk and drain. For the reasons set forth below, the motion is granted, and the complaint dismissed.

**Prior Proceedings**

The Plaintiffs filed their complaint on December 20, 2004, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-80, alleging that Fisko was injured on April 2, 1997 while walking on a thoroughfare between buildings Five, Six, and Seven of the former World Trade Center, when she tripped and fell due to a defective sidewalk and an unsecured drainage cover and that the Government was negligent in failing to maintain these premises in a reasonably safe condition. In addition to the Government, the Plaintiffs named as a defendant "U.S. General Services Administration, as an Executive Agency of the United States of America." Since the only proper defendant in an FTCA action is the United States of America, 28 U.S.C. § 2679(a), the US General Services Administration is dismissed from this action, Diaz v. U.S. Postal Service, No. 02 Civ. 8892 (NRB), 2003 WL 21767530,

1

at *1, n.1, 2003 U.S. Dist. LEXIS 13199 (S.D.N.Y. July 31, 2003), a proposition not challenged by the Plaintiffs. Cardinale maintains that he is entitled to compensation for lost services, companionship, consortium, and comfort of his wife.

The Government's motion to dismiss was heard and marked fully submitted on May 25, 2005. By affidavit of counsel for the Plaintiffs, the Plaintiffs have conceded that the claim of Cardinale is barred by a failure to exhaust his administrative remedies, that Fisko's claim is limited to $2 million, the amount of her administrative claim, and that there is no right to a jury trial. The remaining issue is whether or not Fisko has established jurisdiction in this Court.

**The Facts**

The facts are described in the complaint as follows.

On April 2, 1997, Fisko was injured while she was walking on the Plaza, a public thoroughfare located between buildings Five, Six, and Seven of the former World Trade Center when she tripped and fell due to a "defective sidewalk and an unsecured drainage cover" and was "violently propelled to the ground." See Complaint ("Compl."), ¶¶ 1, 8, 9. The complaint alleges that the Government was negligent in failing to properly inspect, maintain, or repair the sidewalk and the drain, and in failing to provide a safe

environment for Fisko and that as a result, Fisko required extensive medical attention and treatment. See Compl. ¶ 9.

On or about April 2, 1999, Fisko filed an administrative claim with the General Services Administration ("GSA") seeking $2 million in damages for injuries sustained when she "was walking in the plaza area near 7 World Trade Center" and "tripped and fell over a drainage hole." See Claim For Damage, Injury, or Death Filed by Claimant Barbara Fisko, dated April 2, 1999, attached as Exhibit A to the Declaration of Mark S. Johnson ("Johnson Decl."). The GSA denied Plaintiff's claim on June 22, 2004. See Letter from Mark S. Johnson, dated June 22, 2004, attached as Exhibit B to the Johnson Decl.

Certain additional facts are relevant to the jurisdictional issue raised by the Government and are appropriate for consideration without the necessity to convert the Government's motion to that for summary judgment. See Perezic v. Crespo, No. 94 Civ. 8238 (SHS), 1996 WL 233687, at *3, 1996 U.S. Dist. LEXIS 6046 (S.D.N.Y. May 7, 1997).

GSA entered into a lease with the Port Authority, dated June 2, 1970, for space which comprised the entire premises known as Six World Trade Center for use primarily by the United States Customs Service. On April 2, 1997, GSA was using the space

pursuant to the terms of the lease. See Declaration of Florine Rhodes, dated March 17, 2005 ("Rhodes Decl."), ¶ 2.

On October 1, 1995, the Government, through GSA, entered into a contract with Eastco Building Services, Inc. (the "Eastco Contract"). Id. ¶ 5. Pursuant to the Eastco Contract, Eastco was responsible for the maintenance, supervision, and repair of the sidewalks and drainage systems in the plaza area surrounding World Trade Center Six. Id. ¶ 4. Section C, paragraph 1 of the Eastco Contract, entitled "Scope of Work," specified in subsection A, that "the Contractor shall provide all management, supervision, labor, material, supplies, repair parts, tools and equipment, and shall plan, schedule, coordinate, and ensure effective and economical completion of all work and services specified in this contract." Id. ¶ 6. In addition, Section C, paragraph 8 of the Eastco Contract, entitled "Architectural and Structural Repairs," specified in subsection A that "The Contractor shall provide all labor, equipment and materials necessary to perform all architectural and structural maintenance and repairs to the interior and exterior of the facility including but not limited to: . . . sidewalks . . ." Id. ¶ 7. Subsection B further provided: "The level of maintenance shall assure that the property is free of missing components or defects which affect the safety . . . of the facility." Id.

Section J, Exhibit 1, Paragraph B(1)(i) of the Eastco Contract included "storm drainage equipment and systems" as equipment to be "operated, maintained and repaired" by Eastco. Id. ¶ 8. Paragraph B(2) of Section J, Exhibit 1, stated that: "The GSA Form 1736 (Equipment Inventory List) provides an inventory of the equipment and systems installed in the building(s) which must be serviced." Id. Section J, Exhibit 2, of the Eastco Contract, which contains GSA Form 1736 (Equipment Inventory List), includes "40 areaway drains" located on the Plaza among the equipment to be maintained and serviced by Eastco. Id. ¶ 9.

The Contract includes a section pertaining to "Preventive Maintenance," which according to Fisko limits Eastco's duty with respect to repair and maintenance of the areaway drains to annual inspection of the drains, and establishes that the Government, and not Eastco, had responsibility for any further repairs. See Plaintiffs' Memorandum of Law in Opposition to Government's Motion to Dismiss the Complaint ("Pl. Br."), at 2-3. Nelson Palma, Buildings Manager of the Greater Manhattan Field Office of GSA, Region II, has stated by affidavit that preventive maintenance is maintenance performed to prevent the failure and breakdown of equipment and occurs on a less frequent basis than repair of equipment. See Declaration of Nelson Palma ("Palma Decl."), ¶ 4. Eastco was responsible for both preventive maintenance and supervision of the equipment and repairs as needed and had a separate obligation under the Contract to maintain and repair the

5

equipment covered under the Contract, including the drains, on a regular basis. Id.; see also Rhodes Decl., ¶¶ 7-9. According to Palma, this responsibility included patrolling the plaza on a daily basis and looking for any defects in equipment, such as loose drains, that might occur on the property and providing for their repair. Palma Decl. ¶ 4.

No GSA employee supervised the day-to-day operations of Eastco, which performed maintenance of the sidewalks, storm drainage system, and equipment in the Plaza. See Rhodes Decl. ¶ 11. No GSA employee supervised or directed the work of Eastco employees. Id. Eastco maintained liability insurance to cover its operations under the Eastco Contract. Id. ¶ 12.

**The Standard Imposed Upon Fisko**

On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists over their complaint. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In other words, Plaintiff must establish that this court has the constitutional or statutory authority to hear this case. Id.

## The FTCA's Independent Contractor Exception Bars The Complaint

The "United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Mitchell, 445 U.S. 535, 538, 100 S. Ct. 1349, 63 L. Ed. 2d 609 (1980) (citation omitted). The Government cannot be sued without its consent, and "the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212, 103 S. Ct. 2961, 77 L. Ed. 2d 580 (1983). Although Congress can waive the Government's sovereign immunity through clear and unequivocal statutory language, waivers of sovereign immunity and their conditions must be strictly applied against the claimant. See Lane v. Pena, 518 U.S. 187, 192, 116 S. Ct. 2092, 135 L. Ed. 2d 486 (1996); Millares Guiraldes de Tineo v. United States, 137 F.3d 715, 719 (2d Cir. 1998). Accordingly, if the Government has not waived its sovereign immunity, or if the conditions under which the Government has agreed to waive that immunity have not been met, federal subject matter jurisdiction does not exist over the plaintiff's claims. See United States v. Sherwood, 312 U.S. 584, 586, 61 S. Ct. 767, 85 L. Ed. 1058 (1941); Williams v. United States, 947 F.2d 37, 39 (2d Cir. 1991).

The FTCA provides a limited waiver of the Government's sovereign immunity. See Millares Guiradesco de Tineo, 137 F.3d at 719. That statute waives the Government's sovereign immunity only

7

with respect to claims against the United States that seek money damages for personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). The FTCA defines Government "employees" as any "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity." 28 U.S.C. § 2671. A "federal agency" includes "executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States." Id.; Leone v. United States, 910 F.2d 46, 49 (2d Cir. 1990). If the injuries alleged in a complaint were caused by an independent contractor, the FTCA does not waive sovereign immunity for that claim, and it must be dismissed for lack of subject matter jurisdiction. See United States v. Orleans, 425 U.S. 807, 814 (1976); see also Roditis v. United States, 122 F.3d 108, 111 (2d Cir. 1997) (per curiam) ("sovereign immunity precludes suits against the United States for injuries caused by its independent contractors"); Leone, 910 F.2d at 49.

Here, subject matter jurisdiction over Fisko's claims depends upon whether Eastco was a Government contractor or Government agency under the FTCA. The determination as to whether an entity is a Government agency or a contractor is a question of

8

federal law, see Leone, 910 F.2d at 49, which is determined by the terms of the contract between them. See Hentnik v. United States, No. 02 Civ. 9498 (DC), 2003 WL 22928648, at *4, 2003 U.S. Dist. LEXIS 22240 (S.D.N.Y. Dec. 10, 2003). As the Second Circuit has held: "Courts have found it indicative of an agency relationship if the Government enjoys the power to control the detailed physical performance of the contractor . . . or if the Government in fact supervises the day-to-day operations." B & A Marine Co., Inc. v. Am. Foreign Shipping Co., 23 F.3d 709, 713 (2d Cir. 1994) (internal quotations and citations omitted).

The retention of a right to inspect the progress of a contractor's project or the reservation of broad supervisory powers to control a contractor's compliance with the contract's specifications does not establish the agency relationship necessary for FTCA jurisdiction over the Government. See, e.g., Logue v. United States, 412 U.S. 521, 528, 93 S. Ct. 2215, 37 L. Ed. 2d 121 (1973); Roditis v. United States, 122 F.3d 108, 111 (2d Cir. 1997) (the "[G]overnment's retention of a right to inspect . . . does not convert a contractor into a federal employee"); Leone, 910 F.2d at 50 (where Government acts "generally as an overseer," no FTCA jurisdiction); Lipka v. United States, 369 F.2d 288, 290-92 (2d Cir. 1966) (holding general direction from Government does not confer jurisdiction); Hentnik, 2003 WL 22928648, at *4 ("Where the Government has no contractual right to control the contractor['s] physical performance or supervise its day-to-day operations, but

9

instead reserves the right to inspect the contractor['s] performance only to ensure compliance with the terms of the contract, the Government cannot be held liable for the acts of its independent contractor[]").

Here, the Eastco Contract charged Eastco with responsibility for the maintenance, supervision, and repair of the sidewalks and drainage systems in the plaza area between Six and Seven World Trade Center as set forth above. See Rhodes Decl. ¶ 4. Subsection B of that section provided that: "The level of maintenance shall assure that the property is free of missing components or defects which affect the safety . . . of the facility." Id. In addition, Section J, Exhibit 1, Paragraph B(1)(i) of the Eastco Contract includes "storm drainage equipment and systems" as equipment to be "operated, maintained and repaired" by Eastco. Id. ¶ 8. Moreover, Paragraph B(2) of Section J, stated that: "The GSA Form 1736 (Equipment Inventory List) provides an inventory of the equipment and systems installed in the building(s) which must be serviced." Section J, Exhibit 2, constituting the GSA Form 1736 (Equipment Inventory List), included "40 areaway drains" located at the plaza among the equipment to be maintained and serviced. Id. ¶ 9.

The Government did not exercise control over the detailed physical performance or supervise the day-to-day activities of Eastco, but reserved the right to inspect the performance to ensure

10

compliance with the terms of the contract. See Rhodes Decl., Exh. B, Section E(2)(C). These factors establish that the Government was acting "generally as an overseer" and that no agency relationship existed with Eastco. See, e.g., Leone, 910 F.2d at 50. In addition, Eastco maintained liability insurance to cover its operations under the Eastco Contract. Id., Rhodes Decl. ¶ 11.

In view of these circumstances, Eastco was a contractor under the FTCA. See, e.g., Roditis, 122 F.3d at 111-12; Leone, 910 F.2d at 50-51; Shivcharan v. United States, No. 04 Civ. 1296 (SJ), 2005 WL 408046, at *2, 2005 U.S. Dist. LEXIS 6126 (E.D.N.Y. Feb. 15, 2005) (granting motion to dismiss pursuant to independent contractor exception where contract provided that contractor would maintain projects in a safe condition, provide day-to-day maintenance, and take health and safety precautions to protect workers); Diaz, 2003 WL 21767530, at *1-2 (granting motion to dismiss where contract obligated contractor to provide all labor and materials to complete renovations, have a competent superintendent on-site at all times, and indemnify the United States for any injuries that resulted from its work); Carter v. United States, No. 96 Civ. 9139 (MBM) 1998 WL 744009, at *2-3, 1998 U.S. Dist. LEXIS 16758 (S.D.N.Y. Oct. 26, 1998) (granting motion to dismiss where contracts delegated responsibility for renovation, maintenance, and cleaning to contractors; contractor responsible for renovation also agreed to be responsible for any damages to persons as a result of its negligence and to directly superintend the project); Forshaw v.

11

United States, No. 96 Civ. 0150, 1998 WL 641357, at *2-3, 1998 U.S. Dist. LEXIS 14653 (N.D.N.Y. Sept. 14, 1998) (granting motion to dismiss where contract "delegated supervision and control of construction" to the contractor).

In an action directly on point involving a contract with virtually identical provisions, this Court has dismissed for lack of subject matter jurisdiction a lawsuit brought by an individual who slipped and fell on the plaza adjacent to the federal building at 26 Federal Plaza. Burke v. United States, No. 96 Civ. 2470 (LBS), 1996 WL 671151, at *1-2, 1996 U.S. Dist. LEXIS 17550 (S.D.N.Y. Nov. 19, 1996). The court in Burke found that pursuant to the terms of the Government's contract with the contractor, Ogden Allied Building and Airport Services Inc. ("Ogden"), the United States was not responsible for maintenance and repair to the sidewalk, and that because of the discretionary function exception to the FTCA, the court lacked jurisdiction to hold the Government liable for any negligent delegation of responsibility to Ogden or negligent supervision of Ogden. Id. at *2. The contract in Burke and the Eastco Contract in the present case contain identical provisions, delegating full responsibility for the maintenance and repair of the subject area (in Burke the sidewalk in 26 Federal Plaza, and in the present case, the drain in the plaza surrounding Six World Trade Center) to the contractor. As in the Eastco Contract, the Burke contract provided that:

> The Contractor [Ogden] shall provide all labor, equipment
> and materials necessary to perform all architectural and
> structural maintenance and repairs to the interior and
> exterior of the facility including but not limited to ...
> sidewalks, driveways, roads, curbing, parking areas,
> patios and exterior stairways ... .

Id. at *1-2. Likewise, as with the Eastco Contract, the contract in Burke provided that "the level of maintenance shall assure that the property is free of missing components or defects which affect the safety, appearance, or intended use of the facility . . ." Id.; compare Rhodes Decl. ¶ 7 ("The level of maintenance shall assure that the property is free of missing components or defects which affect the safety . . . of the facility."). Finally, as with the contract in Burke, the Eastco Contract provided that the "Contractor is responsible for the day-to-day inspection and monitoring of all work performed to ensure compliance with the contract requirements." See Rhodes Decl., Exh. B, at 0030, ¶ 1.

Moreover, the Eastco Contract, like the contract in Burke, stated that any repair of equipment valued under $2,000 was the responsibility of Eastco, not GSA. See Palma Decl. ¶ 5; Rhodes Decl., Exh. B, pp. 8-11, Section B, ¶¶ 1-3; see also Burke 1996 WL 671151, at *2. The Eastco Contract stated that: "the contractor shall provide all management, supervision, labor, materials, supplies, repair parts, and equipment (except as otherwise provided), and shall plan, schedule, coordinate and ensure effective performance of all services described herein." Id.; Rhodes Decl., Exh. B at p.8, section B, ¶ 1. The cost of providing

13

maintenance repairs up to $2,000 and architectural and structural repairs up to $2,000 was included in the Contract. Palma Decl. ¶ 5. According to Palma, the areaway drain that is the subject of the present lawsuit constitutes equipment with a value of less than $2,000 and therefore, was the responsibility of Eastco pursuant to the Contract. Id.; see Burke, 1996 WL 671551, at *2 ("Plaintiff alleges that she fell on a piece of sidewalk which was 'broken, cracked and uneven' . . . Repair of such a defect would rarely exceed $2,000 and certainly would never exceed $25,000.").

**The Claim Is Barred By § 2680(a) Of The FTCA**

To the extent that the complaint includes a claim that the Government is liable for negligently supervising Eastco or its employees, or that it was negligent in selecting Eastco as its contractor, 28 U.S.C. § 2680(a) provides that no claims may be brought against the Government that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." The purpose of the discretionary function exception is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." United States v. Gaubert, 499 U.S. 315, 323, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991) (citation omitted).

To determine whether the act or omission complained of constitutes a "discretionary function," the Supreme Court has developed a two-part test. First, courts are to consider whether the challenged actions were truly discretionary and involved "an element of judgment or choice" or "whether they were instead controlled by mandatory statutes or regulations." Gaubert, 499 U.S. at 322, 328; see also Berkovitz v. United States, 486 U.S. 531, 544, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988) (holding exception does not preclude suits alleging the violation of a "specific mandatory directive"). If an employee violates a mandatory regulation, then there is no protection from liability as the action was contrary to policy and the discretionary function exception does not apply. See Gaubert, 499 U.S. at 322, 324. Here, Fisko has not pointed to such mandatory and specific regulation, and therefore does not get past the first prong of the Gaubert test. GSA was not required to hire a particular contractor or to engage in a particular degree of oversight over the independent contractor it chose.

It is well-settled that the selection and supervision of contractors is a discretionary function and cannot form the basis for liability under the FTCA. See, e.g., United States v. Varig Airlines, 467 U.S. 797, 819-20, 104 S. Ct. 2755, 81 L. Ed. 2d 660 (1984) (extent of supervision is discretionary function "of the most basic kind"); Williams v. United States, 50 F.3d 299, 309-10 (4th Cir. 1995) (selection of particular contractor falls within

discretionary function); Hentnik, 2003 WL 22928648, at *4 ("It is well settled that the selection and supervision of contractors is a discretionary function"); Carter, 1998 WL 744009, at *4 ("Courts have repeatedly held that the selection and supervision of contractors is a discretionary function, and thus cannot result in governmental liability"). Consequently, the Court also lacks subject matter jurisdiction over the Government with respect to any claims of negligent selection or supervision.

Fisko has contended that the Government is liable for the alleged damage to the drain because, pursuant to the Eastco Contract, the Government contract inspectors retained the right to inspect the contractor's work. See Pl. Br. at 3. "Reservation of the power to control a contractor's compliance with the contract's specifications does not make the contractor an employee." Lipka, 369 F.2d at 291 (citations omitted). "In general, a contract by which the government requires compliance with its rules and regulations, reserves to itself broad supervisory powers, or retains the right to inspect does not confer upon it the degree of control sufficient to support a finding of jurisdiction under the FTCA." Abrams-Fogliani v. U.S., 952 F. Supp. 143, 145-46 (E.D.N.Y. 1996) (citing Logue, 412 U.S. 421). Furthermore, as noted above, the Eastco Contract delegates the primary responsibility for day-to-day inspection and monitoring of all of the work of the contractor. Specifically, the section in the Eastco Contract entitled "Contractor Responsibility" immediately preceding the

section describing the Government inspectors' role, states: "the Contractor is responsible for the day-to-day inspection and monitoring of all work performed to ensure compliance with contract requirements." See Rhodes Decl., Exh. B, at 0030, at Section E, ¶ 1. Therefore, the inclusion in the Eastco Contract of a provision stating that Government inspectors could further inspect the contractor's work to ensure compliance does not mean that Eastco did not maintain control over the repair and maintenance of the drains.

Finally, the Eastco Contract required Eastco to obtain and maintain liability insurance, "a provision found by many courts to evidence that the lessee acted as an independent contractor." See Rhodes Decl. ¶ 12, Exh. G; Abrams-Fogliani, 952 F. Supp. at 146; Larsen v. Empresas El Yunque, Inc., 812 F.2d 14, 16 (1st Cir. 1986); De Blasio v. United States, 617 F. Supp. 1004, 1006-07 (E.D.N.Y. 1985) (and cases cited therein).

Fisko's contention that the law of New York State controls the liability of the United States because it was a lessee of the subject property from the Port Authority is misplaced. As the Supreme Court explained in Logue, 412 U.S. 421, the FTCA, and not the law of the state, governs the liability of the Government for tort actions:

> Congress, of course, could have left the determination as to whose negligence the Government should be liable for

17

under the Federal Tort Claims Act to the law of the State involved, as it did with other aspects of liability under the Act. But it chose not to do this, and instead incorporated into the definitions of the Act the exemption from liability for injury caused by employees of a contractor. While this congressional choice leaves the courts free to look to the law of torts and agency to define "contractor," it does not leave them free to abrogate the exemption that the Act provides.

Id. at 528. Fisko has argued that the Government is liable for non-delegable duties of landowners under New York State law, see Pl. Br. at 4-5. However, "To the extent that plaintiff's complaint can be construed to allege liability for non-delegable duties of landowners under state law there is no subject matter jurisdiction. The Tort Claims Act does not waive sovereign immunity as to such claims." See Burke, 1996 WL 671151, at *2, n.4.

For the foregoing reasons, the motion of the Government is granted and the complaint is dismissed.

It is so ordered.

**New York, NY**
**October 17, 2005**

ROBERT W. SWEET
U.S.D.J.